UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CHARLES WILLIAM MALCOLM, SR.                                    Plaintiff

v.                                                    Civil Action No. 3:23-cv-545

AMERICAN EXPRESS NATIONAL                                       Defendants
BANK ET AL.

**MEMORANDUM OPINION & ORDER**

Defendants Happy Money Inc., ("Happy Money"), New Day Financial, LLC, ("New Day"), Comcast Cable Communications Management, LLC, ("Comcast") (collectively, "Defendants"), and Marlette Funding, LLC ("Marlette") move to dismiss Plaintiff Charles William Malcolm, Sr.'s ("Malcolm") Complaint for failure to state a claim under Rule 12(b)(6).[1] [DE 31; DE 60; DE 65; DE 72]. New Day and Comcast also move to dismiss under Rule 12(b)(1) for lack of lack of subject-matter jurisdiction. [DE 60; DE 65]. Responses and replies were filed to all motions except Marlette's Motion to Dismiss. [DE 64; DE 78; DE 85; DE 86: DE 97; DE 98]. These matters are ripe. For the reasons below, New Day and Comcast's motions to dismiss for lack of subject-matter jurisdiction [DE 60; DE 65] are **DENIED**, Defendants' motions to dismiss for failure to state a claim [DE 31; DE 60; DE 65] are **GRANTED in part** and **DENIED in part**, and Marlette's motion to dismiss [DE 72] is **DENIED as MOOT**.

## I.      BACKGROUND

Malcolm's Complaint alleges that Defendants requested his credit report information even though Malcolm did not have an account with any of the Defendants and had not initiated a credit

---

[1] The parties jointly moved to dismiss with prejudice Malcolm's claims against Marlette, [DE 126], which the Court granted. [DE 127]. As a result, Marlette's motion to dismiss [DE 72] is not included in the Court's analysis and will be denied as moot.

transaction. [DE 1 at 25-27]. Malcolm sued Defendants and twenty-five other entities for violating the Fair Credit Reporting Act, ("FCRA") 15 U.S.C. § 1681 *et seq.* [DE 1-1]. Malcolm alleges Defendants violated the FCRA by performing multiple "soft credit inquiries" on his credit report[2] without a permissible purpose. [*Id.* at 29].

## II.    DISCUSSION

### 1.    New Day's and Comcast's Motions to Dismiss for Lack of Standing [DE 60, DE 65]

New Day and Comcast bring motions to dismiss for lack of Article III standing, arguing that because Malcolm only alleges soft credit inquiries—which do not affect a credit score—Malcolm has not adequately alleged that he suffered an injury in fact. [DE 60; DE 65]. Because New Day and Comcast move to dismiss under both Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6), the Court will consider subject-matter jurisdiction first. *See e.g.*, *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) ("When a defendant seeks a dismissal under both Rule 12(b)(1) and 12(b)(6), the Court is bound to consider the Rule 12(b)(1) motion first, because the Rule 12(b)(6) motion will become moot if the Court lacks subject matter jurisdiction.").

Rule 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint. Generally, Rule 12(b)(1) motions fall into two categories: facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir.

---

[2] A soft inquiry occurs "'when a person or company checks your credit report as part of a background check . . . [or] when an individual checks his/her credit score. Soft inquiries do not affect credit scores in any way.'" *McMahan v. Byrider Sales of Indiana S, LLC*, No. 3:17-CV-00064-GNS, 2017 WL 4077013, at *1 n. 1 (W.D. Ky. Sept. 14, 2017) (citing *Burry v. Cach LLC*, No. 14-2139, 2015 WL 328182, at *1 n.2 (E.D. Pa. Jan. 22, 2015)). A hard inquiry, on the other hand, "is essentially a credit check," that "can result in a credit score's reduction by up to five points." *Id.* at *1 n. 1. While Malcolm alleges other defendants in this case performed hard inquiries, [*see* DE 1-1 at 24-29], he alleges that New Day, Comcast and Marlette conducted only soft inquiries on his credit report.

1994). In a facial attack, the defendant asserts that the allegations in a complaint are insufficient on their face to invoke federal jurisdiction. *Id*. By contrast, in a factual attack, the defendant disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction and the Court is free to weigh the evidence. *Id*. The plaintiff has the burden of proving subject matter jurisdiction to survive a motion to dismiss under Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990). Because New Day and Comcast assert the allegations in the complaint are insufficient on their face to invoke federal jurisdiction, this is a facial attack, and the allegations in Malcolm's Complaint are presumed to be true. *See Armstrong Coal Co. v. United States DOL*, 927 F. Supp. 2d 457, 461 (W.D. Ky. 2013).

A plaintiff must have standing under Article III of the Constitution, which "limits the judicial power to resolving actual 'Cases' and 'Controversies.'" *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020). The standing test has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff's injury in fact must be both "(a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).

Only the first element, injury in fact, is at issue. As the Sixth Circuit has explained, "[a]fter *Spokeo*, we know there is no such thing as an 'anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury.'" *Thomas v. TOMS King (Ohio), LLC*, No. 20-3977, 2021 WL 1881380 (6th Cir. May 11, 2021) (quoting *Huff v. TeleCheck Servs., Inc.*, 923 F.3d 458, 463 (6th Cir. 2019)). Procedural violations of statutory rights do not, in and of themselves, amount to concrete injuries.

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). Yet Congress's decision to create a statutory cause of action "may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law," so long as those injuries "'exist' in the real world." *Id.* (first quoting *Spokeo*, 578 U.S. at 341, then quoting *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018)). Both tangible and intangible harms can create Article III standing. *TransUnion*, 594 U.S. at 426; *Spokeo*, 578 U.S. at 340. To determine whether an intangible harm is a procedural violation or rises to the level of a concrete injury, "courts may look to (1) history and tradition and (2) Congress's judgment in enacting the law at issue." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 343 (6th Cir. 2023) (citing *TransUnion*, 594 U.S. at 425-26; *Spokeo*, 578 U.S. at 340). Article III standing "does not require an exact duplicate in American history and tradition." *TransUnion*, 594 U.S. at 426. But it does require that the intangible harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341 (citation omitted).

### A. History and Tradition

The Sixth Circuit has not addressed whether a soft credit inquiry without a permissible purpose has a close relationship to a harm that traditionally provides a basis for a lawsuit, and other federal courts are split on this issue. *See, e.g., Robinson v. Cap. One Bank (USA), N.A.*, No. 19-2275-DDC-KGG, 2020 WL 5819664, at *4 (D. Kan. Sept. 30, 2020) (collecting cases). Some courts find that a soft credit inquiry that violates the FCRA is an invasion of privacy, analogous to the tort of intrusion;[3] others hold that such a violation is insufficient on its own to constitute a

---

[3] *See e.g., Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493 (9th Cir. 2019) (holding that a plaintiff "has standing to vindicate her right to privacy under the FCRA when a third-party obtains her credit report without a purpose authorized by the statute, regardless [of] whether the credit report is published or otherwise used by that third-party.")

concrete injury.[4] As a result, the Sixth Circuit's reasoning in similar Article III standing cases provides a helpful framework for the Court's analysis.

In *Dickson*, the Sixth Circuit considered whether a violation of the Telephone Consumer Protection Act of 1991 ("TCPA") could qualify as a concrete injury. 69 F.4th at 341. Congress enacted the TCPA to combat unwanted automated and prerecorded phone calls, and Congress explicitly found that such calls could be "an intrusive invasion of privacy." Pub. L. 102-243 § 2, ¶ 5 (1991). The court noted Congress' findings and explained that those unwanted communications implicated the right to privacy, in part, because "some consider their phone number a matter of private information in and of itself . . . entrusting them only to their circle of friends, family, and select others on an as-needed basis." *Dickson*, 69 F.4th at 344. Citing *Gadelhak v. AT&T Services, Inc.*, the Sixth Circuit concluded that sending automated telemarketing messages—in *Gadelhak*, text messages; in *Dickson*, voicemails—had a close relationship to the common law tort of intrusion upon seclusion, "a cause of action aimed at 'defendants who invade the private solitude of another.'" *Dickson,* 69 F.4th at 343 (citing *Gadelhak,* 950 F.3d 458 (7th Cir. 2020)). The tort of intrusion "helped to address irritating intrusions into one's privacy, such as when telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff." *Id.* at 344 (citing *Gadelhak*, 950 F.3d at 462) (internal quotation marks omitted). Although the tort of intrusion "generally require[s] a much more substantial imposition," than a few unwanted text messages, *id.*, the court explained it was still analogous because *Spokeo* instructs courts "to look for a 'close relationship' *in kind, not degree.*" *Id.* (citing *Gadelhak*, 950

---

[4] *See e.g., Oneal v. First Tenn. Bank*, No. 4:17-CV-3-TAV-SKL, 2018 WL 1352519, at *6–10 (E.D. Tenn. Mar. 15, 2018) (granting motion to dismiss for lack of standing, finding that "[a]bsent an allegation that defendant used or disseminated [plaintiff's] credit report in any harmful way—or otherwise exposed this information to a substantial risk of access by others—plaintiff has alleged an injury that is merely 'abstract,' rather than 'de facto.'" (internal citation and citation omitted))

F.3d at 462–63). Even though "[a] few unwanted automated text messages may be too minor an annoyance to be actionable at common law," the court emphasized that "such texts nevertheless pose the same *kind* of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable." *Id*. (citing *Gadelhak*, 950 F.3d at 462–63). The Sixth Circuit also extended *Gadelhak's* reasoning to a Fair Debt Collection Practices Act ("FDCPA") case, finding that one unwanted voicemail "is injury enough" to establish Article III standing because "[t]he intrusion caused by unwanted phone calls bears a 'close relationship' to the kind of harm" protected by common-law intrusion upon seclusion. *Ward v. NPAS, Inc.*, 63 F.4th 576, 580–81 (6th Cir. 2023).

In contrast, in *Huff*, the Sixth Circuit considered whether a consumer reporting agency's failure to disclose to a consumer all information in his file, as required by § 1681g(a)(1) of the FCRA, constituted a concrete injury. 923 F.3d at 461. Although plaintiff argued he was "robb[ed] of his right to monitor his file," and the "risk of a check decline created by [defendant's] nondisclosure establishes standing," the court found these arguments unpersuasive for two main reasons. *Id*. at 467. First, Congress never explained "how a technical impairment of a consumer's ability to monitor a credit report—that carries no actual consequences for the consumer—rises to the level of an Article III injury." *Id*. Second, this section of the FCRA lacked the kind of "interlocking statutory protections," Congress crafted for other statutes; § 1681g(a)(1) merely provided a way for consumers "to look into and correct information in their files, [but] it does not provide a shield from imminent economic harm in the way the Fair Debt Collection Practices Act does." *Id.* at 468. As a result, the Sixth Circuit held that this was the kind of "bare procedural violation" that *Spokeo* cautioned against, one that was "attenuated from any real harm or imminent

risk of harm, that Congress cannot convert into Article III standing." *Huff*, 923 F.3d at 467-68 (quoting *Spokeo*, 578 U.S. at 340-41; *Hagy*, 882 F.3d at 622).

As stated above, the Court may look to history and tradition in determining whether an intangible harm is a procedural violation or rises to the level of a concrete injury. The Sixth Circuit found in *Dickson* and *Ward* that unwanted phone calls and voicemails had a close relationship to the common law tort of intrusion upon seclusion, *Dickson*, 69 F.4th at 343; *Ward v. NPAS, Inc.*, 63 F.4th at 580–81, and agreed with the Seventh Circuit's opinion in *Gadelhak* that unwanted text messages were also analogous. 950 F.3d at 462–63. On the other hand, in *Huff*, the Sixth Circuit explained that a "technical impairment of a consumer's ability to monitor a credit report" was not analogous to the tort of intrusion upon seclusion. 923 F.3d at 467-68. In this case, history and tradition indicate that a soft credit inquiry without a permissible purpose is analogous to the concrete privacy injuries in *Dickson*, *Gadelhak*, and *Ward*, and unlike the simple procedural violation in *Huff*.

In *Smith v. Bob Smith Chevrolet, Inc.*, another court in our district found a plaintiff's right to privacy included the contents of his credit report. 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003). The plaintiff in *Smith* alleged claims for both a violation of the FCRA and a Kentucky state-law claim for invasion of privacy. *Id*. at 822. Although the court was not considering whether a soft credit inquiry qualified as a concrete injury, part of its analysis on the state-law invasion of privacy claim focused on whether the defendant intruded "into a matter the plaintiff has a right to keep private." *Id*. The court found that a plaintiff's credit report was such a matter, stating that "[defendant] does not appear to dispute the second element: Plaintiff had a right to keep his credit report private." *Id*. The court's reasoning in *Smith* aligns with the Supreme Court's articulation of the right to privacy, that "both the common law and the literal understandings of privacy

7

encompass the individual's control of information concerning his or her person." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763–64 (1989). As the Ninth Circuit explained, when a third party violates the FCRA by obtaining a consumer's credit report without a permissible purpose, the consumer is "deprived of the right to keep private the sensitive information about his or her person," contained in a credit report. *Nayab*, 942 F.3d at 492.

### B. Congress's Judgment

The Court may also look to Congress's judgment in enacting the statute to determine whether an intangible harm is a procedural violation or rises to the level of a concrete injury. In enacting the FCRA, Congress explicitly stated that "the Congress makes the following findings . . . [t]here is a need to insure [sic] that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and *a respect for the consumer's right to privacy*." 15 U.S.C.A. § 1681(a)(4) (emphasis added). Congress's findings further reflect that it crafted portions of the FCRA with the kind of "interlocking statutory protections," that *Huff* found § 1681g(a)(1) lacked, with Congress also finding that an "elaborate mechanism has been developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." 15 U.S.C.A. § 1681(a)(2). "By providing for statutory damages and '[b]y providing a private cause of action for violations of [Sections 1681f and 1681q], Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy.'" *Nayab,* 942 F.3d at 492–93 (quoting *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017) (brackets in original); *Spokeo*, 578 U.S. at 341.

Congress exercised its judgment in choosing to make a credit inquiry without a permissible purpose a legally cognizable injury, and as other courts in this district have noted, the FCRA "makes no distinction between hard and soft inquiries; either is permissible if made for an

appropriate purpose." *McMahan v. Byrider Sales of Indiana S, LLC*, No. 3:17-CV-00064-GNS, 2017 WL 4077013, at *1, n. 1 (W.D. Ky. Sept. 14, 2017) (citing *Bowling v. Scott Lowery L. Off., P.C.*, No. 5:13-CV-00091-TBR, 2014 WL 3942280, at *2 (W.D. Ky. Aug. 12, 2014)); *see* 15 U.S.C. § 1681b(a)(3)(A).[5] As noted above, a soft credit inquiry "bears a close relationship to the kind of injury protected by the common law tort of intrusion upon seclusion; and [the] claimed harm directly correlates with the protections enshrined by Congress" in the FCRA. *Dickson*, 69 F.4th at 349. Accordingly, Malcolm has plausibly alleged that he suffered a concrete injury-in-fact sufficient for Article III standing purposes. As a result, Defendants' motions to dismiss for lack of standing [DE 60; DE 65] are **DENIED**.

2.   **Defendants' Motions to Dismiss for Failure to State a Claim [DE 31, DE 60, DE 65]**

Rule 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a

---

[5] § 1681b provides in relevant part:

> A consumer reporting agency may furnish a consumer report under the following circumstances and no other:
> . . .
> (3) To a person which it has reason to believe--
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
> (B) intends to use the information for employment purposes; or
> (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or
> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's responsibility or status; or
> (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or
> (F) otherwise has a legitimate business need for the information . . .

15 U.S.C. § 1681b(a)(3).

complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. Of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

Defendants move to dismiss Malcolm's claims on the grounds that his Complaint fails to put them on notice of which FCRA provisions they allegedly violated, [DE 31 at 308; DE 60 at 457; DE 65 at 499], and that Malcolm fails to properly allege willful or negligent noncompliance with the FCRA. [DE 31 at 315; DE 60 at 458; DE 65 at 499-500]. Happy Money and New Day both move to dismiss Malcolm's claims based on § 1681b(f) because he has failed to allege that

they used or obtained his credit report. [DE 31 at 312; DE 60 at 467-68]. Happy Money also moves to dismiss on the grounds that Malcolm has not properly alleged that it lacked a permissible purpose for requesting his credit report. [DE 31 at 316-17]. Finally, both New Day and Happy Money move to dismiss Malcolm's FCRA claims, to the extent that he has alleged any, that are premised on the allegations that they are furnishers of information. [DE 31 at 317; DE 60 at 458-59]. The Court addresses each argument below.

### A.  *Fair Notice of Malcolm's Claims*

As noted above, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff must provide both "'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 555 n.3. Defendants argue that because Malcolm failed to cite specific provisions of the FCRA in his Complaint, Defendants lack notice of which sections they allegedly violated. [DE 31 at 308; DE 60 at 457; DE 65 at 499].

A claim for a violation of § 1681b(f) requires three elements: "[1] that there was a 'consumer report' within the meaning of the statute, [2] that the defendant used or obtained it, and [3] that the defendant did so without a permissible statutory purpose." *Adams v. Fifth Third Bank*, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932, at *5-6 (W.D. Ky. Feb. 9, 2017) (quoting *Bowling*, 2014 WL 3942280, at *2 (W.D. Ky. Aug. 12, 2014) (citations omitted). Although Malcolm does not cite a specific provision of the FCRA in his Complaint, he mirrors this language, alleging that all defendants, including Happy Money, New Day, and Comcast, "knowingly and intentionally violated the FCRA by requesting Mr. Malcolm's consumer report for an impermissible purpose." [DE 1-1 at 29]. For the first element, the parties do not dispute that

Malcolm's credit report qualifies as a consumer report within the meaning of § 1681.[6] As to the second element, Happy Money and New Day argue that although Malcolm alleges that they requested his credit report, he has failed to allege that they used or obtained Malcolm's credit report. [DE 31 at 312; DE 60 at 467-68]. But Malcolm does allege this: he specifically states that "[e]ach Defendant's unlawful *request, acquisition, and review* of Mr. Malcolm's sensitive personal information is highly offensive to Mr. Malcolm as it would be to any other reasonable person." [DE 1-1 at 23] (emphasis added).

Moreover, § 1681(b)(a)(3)(A), in relevant part, authorizes a consumer reporting agency to furnish a consumer report upon request if "it has reason to believe . . . [the requester] intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Malcolm alleges that Defendants "falsely represented that Malcolm had initiated a credit transaction with each entity or had an existing account with each entity." [DE 1-1 at 29]. The Court is required to accept these factual allegations as true and draw all reasonable inferences in Malcolm's favor, and it is a reasonable inference that if Defendants requested Malcolm's credit report and asserted that they had a permissible statutory purpose for doing so, the consumer reporting agency furnished Malcolm's credit report to them. Accordingly, Malcolm has adequately alleged that Defendants used or obtained his credit report.

---

[6] 15 U.S.C.A. § 1681a(d)(1) defines a consumer report as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

Happy Money argues that Malcolm has failed to allege that it used or obtained his credit report without a permissible purpose, because even a "knowing, false representation about Plaintiff's initiation or creation of an account with Happy Money does not foreclose that Happy Money could have used or obtained Plaintiff's credit report for an authorized purpose pursuant to 15 U.S.C. § 1681b(f)(1)." In essence, Happy Money argues that even if its' stated purpose for accessing Malcolm's credit report was impermissible, it might have also had another—unstated—permissible purpose for doing so. But at this stage of litigation, the Court must accept Malcolm's factual allegations as true. § 1681b(1) lists the only permissible purposes for accessing a credit report, such as when a consumer has an existing account with an entity or initiates a credit transaction with them; Malcolm alleges that Defendants, including Happy Money, falsely stated they had one of these permissible purpose for accessing his credit report. As a result, the Court "must wait until a later stage of this case to resolve the question of [Defendants'] permissible purpose under FCRA (or lack thereof)." *Adams*, 2017 U.S. Dist. LEXIS 18932, at *16. Accordingly, Malcolm has plausibly alleged that Defendants lacked a permissible purpose for accessing his credit report.

While Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678 it "sets a relatively low bar for pleading adequacy." *Columbia Gas Tramsmission, LLC v. Lockard*, No. 7:18-CV-40-REW-HAI, 2019 WL 3302818, at *1 n.1. (E.D. Ky. July 23, 2019) (citing *Iqbal*, 556 U.S. at 678). Although Malcolm's complaint does not specifically cite a section of the FCRA, he adequately alleges the three elements of a § 1681b(f) violation; Defendants "request[ed] acqui[red] and review[ed]" his credit report, [DE 1-1 at 23], and did so without a permissible purpose under the FCRA. [*Id.* at 29]. *See, e.g., Bickley v. Dish Network, LLC*, No. 3:10-CV-00678-H, 2012 WL 5397754, at *3 (W.D. Ky. Nov. 2, 2012),

*aff'd*, 751 F.3d 724 (6th Cir. 2014) ("Plaintiff does not point to a specific provision of the FCRA that Defendant allegedly violated, but based on the language of his Complaint, Plaintiff seems to claim that Defendant did not access or use his credit report in accordance with a permissible purpose as outlined in 15 U.S.C. § 1681b(a). Under the FCRA, this amounts to a violation of § 1681b(f)[.]"). As a result, Defendants' motions to dismiss on the grounds that Malcolm's Complaint fails to put them on notice of which FCRA provisions they allegedly violated, [DE 31 at 308; DE 60 at 457; DE 65 at 499], Happy Money and New Day's motions to dismiss Malcolm's claims based on § 1681b(f) because he has failed to allege that they used or obtained his credit report, [DE 31 at 312; DE 60 at 467-68], and Happy Money's motion to dismiss on the grounds that Malcolm has not properly alleged that it lacked a permissible purpose for requesting his credit report, [DE 31 at 316-17] are **DENIED**.

### B. Willful or Negligent Noncompliance

Defendants next argue that even if Malcolm's Complaint puts them on notice of claims brought under § 1681b(f), Malcolm fails to adequately allege a required mental state: either that the violations were willful, as required by § 1681n(a), or negligent, as required by § 1681o. [DE 31 at 315; DE 60 at 458; DE 65 at 499-500]. Section 1681n(a) provides:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; []
>
> . . .
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

14

15 U.S.C. § 1681n(a). Section 1681o provides:

> Any person who is negligent in failing to comply with any requirement imposed
> under this title [15 USCS §§ et seq.] with respect to any consumer is liable to that
> consumer in an amount equal to the sum of—
>
> (1) any actual damages sustained by the consumer as a result of the failure; and
>
> (2) in the case of any successful action to enforce any liability under this section,
> the costs of the action together with reasonable attorney's fees as determined by the
> court.

15 U.S.C. § 1681o.

In *Safeco Insurance Co. of America v. Burr*, the Supreme Court explained that acting

recklessly is also a violation of § 1681n. 551 U.S. 47, 52 (2007). In the context of the FCRA, an

action is reckless when it "[runs] a risk of violating the law substantially greater than the risk

associated with a reading [of the FCRA] that was merely careless." *Id*. at 69. Although noted in

dicta, the Sixth Circuit has interpreted *Safeco* as also extending § 1681n to both "deliberate" and

"knowing" violations of the FCRA. *Armalite, Inc. v. Lambert*, 544 F.3d 644, 648-49 (6th Cir.

2009) (citing *Safeco*, 551 U.S. at 57-59).

Malcolm cites both § 1681n and § 1681o in his Complaint, alleging that all defendants

"knowingly and intentionally violated the FCRA by requesting Mr. Malcolm's consumer report

for an impermissible purpose, i.e. by falsely representing that Mr. Malcolm had initiated a credit

transaction with each entity or had an existing account with each entity." [DE 1-1 at 29]. In *Adams*,

another court in our district addressed the sufficiency of very similar allegations:

> Taking as true Plaintiffs' well-pleaded material allegations, Fifth Third, knowing it
> had no right to collect a debt from Plaintiffs, and knowing Plaintiffs had not recently
> initiated a credit transaction, obtained Plaintiffs' credit reports anyway. These
> allegations "imply recklessness at the very least, and reckless conduct qualifies as
> willful conduct under the FCRA." *Santangelo v. Comcast Corp.*, 162 F. Supp. 3d
> 691, 700 (N.D. Ill. 2016) (citing *Murray v. New Cingular Wireless Servs., Inc.*, 523
> F.3d 719, 725-26 (7th Cir. 2008)) (plaintiff's complaint that defendant obtained his

> credit report when defendant "knew that it did not have a legitimate need" plausibly
> stated FCRA claim); *Safeco, 551 U.S. at 47*.

2017 U.S. Dist. LEXIS 18932, at *18-19. Like the plaintiff in *Adams*, Malcolm alleges that

Defendants actions were not just reckless, but that they knew Malcolm had not initiated a credit

transaction, or did not have an existing account, and obtained his credit report in violation of the

statute anyway. Presuming these factual allegations to be true and making all reasonable inferences

in favor of Malcolm, he has adequately alleged a willful violation of the FCRA under § 1681n,

and Defendants' motions to dismiss Malcolm's claims for a willful violation of the FCRA will be

**DENIED**.

In contrast, allegations for a violation of § 1681o require a slightly different analysis.

Unlike § 1681n(a)(1)(A), which allows a plaintiff to recover either actual damages or "damages

of not less than $100 and not more than $1,000," § 1681o(1) only permits recovery of "any actual

damages sustained by the consumer." Malcolm's Complaint seeks recovery for the "actual

damages he sustained" for Defendants' negligent actions under § 1681o. [DE 1-1 at 29].

Malcolm's only allegation of actual damages in the Complaint is that "the unauthorized

hard-credit inquiries published in Mr. Malcolm's credit reports by the Defendants has cause a

precipitous decrease in Mr. Malcolm's credit score and has caused Mr. Malcolm a great deal of

upset, anxiety, and frustration." [DE 1-1 at 24]. Yet Malcolm does not allege that Happy Money,

New Day, and Comcast performed hard credit inquiries; he alleges that they only performed soft

inquires on his credit report. [*See id*. at 25-27]. While impermissible credit inquiries may be

"sufficient to confer Article III standing, those same claims are insufficient to constitute 'actual

damage[]' under FCRA § 1681o."*Adams*, 2017 U.S. Dist. LEXIS 18932, at *21; *see also Huff*,

923 F.3d at 462 ("There is a difference between failing to establish the elements of a cause of

action and failing to show an Article III injury . . . there can be overlap between the two inquiries.

16

But they are not one and the same."). As a result, Malcolm fails to state a claim for a negligent violation of the FCRA under § 1681o, and Defendants' motions to dismiss Malcolm's claims for a negligent violation of the FCRA will be **GRANTED**.

### C. *Furnisher of Information*

Finally, both Happy Money and New Day move to dismiss any claim brought by Malcolm for a violation of § 1681s-2, which governs responsibilities of "furnishers of information" to consumer reporting agencies. Happy Money and New Day argue that Malcolm's Complaint refers to them as furnishers of information under the FCRA without asserting any facts or alleging any of the elements for a violation of § 1681s-2. [DE 31 at 316-17; DE 60 at 458-59]. In response, Malcolm states that he does not allege that either Happy Money or New Day are furnishers of credit information and is not alleging a violation of § 1681s-2. [DE 64 at 490; DE 85 at 603]. To the extent that Malcolm's Complaint could be read to allege a violation of § 1681s-2, he has waived any opposition to the motions to dismiss on this claim. *See, e.g., Humphrey v. United States Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (holding that where a "plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived."); *Scott v. State of Tenn.*, 878 F.2d 382 (table), 1989 WL 72470, at *2 (6th Cir.1989) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."). Accordingly, the Court **GRANTS** Happy Money's and New Day's motions to dismiss any claim for a violation of § 1681s-2.

### III.   CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) New Day and Comcast's motions to dismiss for lack of Article III standing [DE 60; DE 65] are **DENIED.**

(2) Happy Money's motion to dismiss for failure to state a claim [DE 31] is **GRANTED in part** and **DENIED in part.** Happy Money's motion is **GRANTED** as to Malcolm's claim for a negligent violation of the FCRA under § 1681o and to the extent that Malcolm brings a claim against Happy Money for a violation of § 1681s-2. Happy Money's motion to dismiss is otherwise **DENIED**.

(3) New Day's motion to dismiss for failure to state a claim [DE 60] is **GRANTED in part** and **DENIED in part.** New Day's motion is **GRANTED** as to Malcolm's claim for a negligent violation of the FCRA under § 1681o and to the extent that Malcolm brings a claim against New Day for a violation of § 1681s-2. New Day's motion is otherwise **DENIED**.

(4) Comcast's motion to dismiss for failure to state a claim [DE 65] is **GRANTED in part** and **DENIED in part.** Comcast's motion is **GRANTED** as to Malcolm's claim for a negligent violation of the FCRA under § 1681o and is otherwise **DENIED**.

(5) Marlette's motion to dismiss for failure to state a claim [DE 72] is **DENIED as MOOT.**

September 17, 2024

Rebecca Grady Jennings, District Judge

United States District Court

cc:    Counsel of record

18